# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN LYNN JEFFRIES,<br><br>               Plaintiff,<br><br>   v.<br><br>A.H. MARTINEZ, *et al*.<br><br>              Defendants. | Case No. 2:16-cv-07673-CAS (MAA)<br><br>**MEMORANDUM DECISION AND ORDER DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND** |

## I.    INTRODUCTION

On October 14, 2016, Plaintiff Allen Lynn Jeffries ("Plaintiff"), currently incarcerated at California State Prison in Lancaster, Los Angeles County, California (the "Prison"), proceeding *pro se*, filed a civil Complaint alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983). (ECF No. 1.)  On November 29, 2016, Plaintiff filed a First Amended Complaint.  ("FAC," ECF No. 8.)  On June 5, 2018, the previously assigned Magistrate Judge dismissed the FAC with leave to amend.  ("June 5, 2018 Order," ECF No. 13.)  On June 11, 2018, the Court transferred this case to the calendar of Magistrate Judge Maria A. Audero. (ECF No. 14.)

Pending before the Court is Plaintiff's Second Amended Complaint, filed on June 25, 2018. ("SAC," ECF No. 17.) The Court has screened the SAC as prescribed by 28 U.S.C. § 1915A ("Section 1915A") and 28 U.S.C. § 1915(e)(2)(B) ("Section 1915(e)(2)(B)"). For the reasons stated below, the SAC is **DISMISSED WITH LEAVE TO AMEND**.

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS AND CLAIMS FOR RELIEF

To facilitate the understanding of Plaintiff's allegations, which often need to be duplicated given the nature of the standard civil rights complaint form, the Court re-states Plaintiff's allegations in prose form.

### A. Plaintiff's Allegations

On April 21, 2016, Plaintiff was sitting in the front area of the North Dining Hall waiting to leave when an alarm sounded in the B Dining Hall. From where he was sitting, Plaintiff could not see what was happening in the back of the kitchen where, according to Plaintiff, the incident was occurring. At this time, and throughout the incident, Plaintiff was out of the view of Defendants Murray and Douglass because they were in the back of the kitchen.

Defendant Davis, who was the designated official to open the door for the other responding officials, responded to the alarm. Defendant Davis waited for the other responding officials to gather so they could enter together, and opened the door. The other responding officials came through the North Dining Hall door and ordered Plaintiff and others to "prone out" as the officials proceeded to the back of the kitchen. While a few of these officials stayed behind in the North Dining Hall pursuant to security procedures, others went to the back of the kitchen and handcuffed some Hispanic prisoners and escorted them out. There was no fighting in the North Dining Hall and Plaintiff suffered no injuries.

On that same day, each of Defendants Douglass, Davis, and Harris filed Incident Reports, and Defendant Murray filed a Rules Violation Report ("RVR"), all stating that Plaintiff had participated in the riot. On April 27, 2016, Defendant Lugo filed and classified an RVR stating that a confidential informant witnessed Plaintiff participate in the riot.

On May 29, 2016, Defendant Varela held a disciplinary hearing regarding the accusation that Plaintiff had participated in the riot. During this hearing, Plaintiff explained that the incident had occurred in the back of the kitchen out of his view, that he had not been involved, and that he had suffered no injuries. Plaintiff requested the testimony of witnesses who Plaintiff claims would have verified his location during the incident, but Defendant Varela denied the request. Plaintiff requested a review of the confidential informant's report, but Defendant Varela responded only that the informant did not say who Plaintiff was fighting.

Defendant Varela found Plaintiff guilty and disciplined him as follows: (1) loss of his culinary job with the second highest pay scale; (2) loss of outdoor activity for a lengthy period of time; (3) loss of phone, dayroom, and package privileges for ninety days; and (4) ninety days of lost credit. Plaintiff contends that, even though he is a "lifer," the false reports will hurt his chances for parole.

Plaintiff contends that Defendant Varela disciplined him more harshly than other prisoners even though Plaintiff's RVR was a "mirror image" of theirs. He alleges that Defendant Varela "found every last African American guilty of participating in a riot," while he found the seven Hispanic prisoners guilty only of the lesser offense of "disobeying a direct order."

Plaintiff contends that Defendant Sebok also treated Plaintiff more harshly than three other prisoners who had similar RVRs by dismissing the RVRs against those prisoners but not dismissing the RVR against Plaintiff. On July 7, 2016 and August 23, 2016, Plaintiff sent written complaints and supporting evidence to Defendant Warden Asuncion, requesting an investigation. Defendant Asuncion, in

3

turn, sent the evidence to Defendant Lugo so that he could conduct the investigation, even though, according to Plaintiff, Defendant Lugo was "part of the problem and had a hand in preparing the false document."

On August 31, 2016, Plaintiff sent via U.S. mail Form 22 to Chief Deputy Warden Cano complaining about the above incidents. However, Defendant Sebok intercepted the complaint and did not allow it to reach Chief Deputy Warden Cano. Instead, on that same day, Defendant Lugo summoned Plaintiff to his office to inform Plaintiff that Defendant Asuncion had forwarded to Defendant Lugo Plaintiff's complaint seeking an investigation of the false RVR. Plaintiff alleges that, as of June 13, 2018, Defendant Lugo had not summoned Plaintiff back to discuss the false RVR.

### B. Plaintiff's Claims for Relief

Based on these allegations, Plaintiff raises seven claims and prays as follows:

<u>Claim 1 against Defendants Murray and Douglass</u>: Acting under color of state law, Defendants Murray and Douglass violated Plaintiff's Eighth Amendment rights by filing a false RVR and a false Incident Report, respectively; Plaintiff seeks $50,000 in damages from each of Defendants Murray and Douglass and back pay for the lost job.

<u>Claim 2 against Defendant Davis</u>: Defendant Davis violated Plaintiff's Eighth Amendment rights by filing a false Incident Report; Plaintiff seeks $50,000 in damages, back pay for the lost job, and expungement of Defendant Davis' RVR.

<u>Claim 3 against Defendant Lugo</u>: Defendant Lugo (1) violated Plaintiff's Eighth Amendment rights by filing and classifying a false RVR, and (2) violated Plaintiff's Fourteenth Amendment rights by blocking the investigation of the false RVR; Plaintiff seeks $50,000 in damages and back pay for the lost job.

<u>Claim 4 against Defendant Harris</u>: Acting under the color of state law, Defendant Harris violated Plaintiff's Eighth Amendment rights by filing a false

Incident Report; Plaintiff seeks $50,000 in damages, back pay for the lost job, and expungement of the report.

Claim 5 against Defendant Varela: Acting under color of state law, Defendant Varela violated Plaintiff's Eighth and Fourteenth Amendment rights by (1) failing to allow witnesses at Plaintiff's disciplinary hearing, (2) refusing to allow Plaintiff to review the confidential informant's report, (2) disregarding the absence of inculpatory evidence from the confidential informant, and (3) disciplining him and other African American prisoners more harshly than Hispanic prisoners; Plaintiff seeks $50,000 in damages.

Claim 6 against Defendant Sebok: Acting under color of state law, Defendant Cano (1) violated Plaintiff's First Amendment rights by intercepting Plaintiff's mail to the Chief Deputy Warden that contained Plaintiff's grievance, and (2) violated Plaintiff's Fourteenth Amendment rights by depriving Plaintiff of "a higher authority" (the Chief Deputy Warden) to conduct the investigation into Plaintiff's claims; Plaintiff seeks $75,000 in damages.

Claim 7 against Defendant Asuncion: Acting under color of state law, Defendant Asuncion violated Plaintiff's Fourteenth Amendment rights by depriving Plaintiff of a fair investigation into his claims through her decision to have Defendant Lugo conduct the investigation even though he was "part of the problem and had a hand in preparing the false document"; Plaintiff seeks $50,000 in damages.

## III.   STANDARD OF REVIEW

Federal courts must conduct a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity (Section 1915A), or in which a plaintiff proceeds *in forma pauperis* (Section 1915(e)(2)(B)). The court must identify cognizable claims and dismiss any complaint, or any portion thereof, that is: (1) frivolous or malicious,

(2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

When screening a complaint to determine whether it fails to state a claim upon which relief can be granted, courts apply the Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") standard. *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to Section 1915(e)(2)(B)(ii)); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to Section 1915A). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure 8(a) ("Rule 8"), which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Li v. Kerry*, 710 F.3d 995, 998 (9th Cir. 2013). In reviewing a motion to dismiss, the court will accept factual allegations as true and view them in the light most favorable to the plaintiff. *See Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017) (citing *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011)). Although "detailed factual allegations" are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Conclusory allegations of law . . . are insufficient . . . ." *Park*, 851 F.3d at 918 (first ellipsis in original) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001)). Rather, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 662. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Where a plaintiff is *pro se*, particularly in civil rights cases, courts should construe pleadings liberally and afford the plaintiff any benefit of the doubt. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). "[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). A court should grant a *pro se* plaintiff leave to amend a defective complaint "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar*, 698 F.3d at 1212.

## IV. DISCUSSION

### A. The SAC Fails to State Claims Against Defendants Sebok, Varela, and Asuncion in Their Official Capacities.

The FAC was asserted against all Defendants in both their individual and official capacities. (FAC at 8-10.) In a June 5, 2018 order dismissing the FAC with leave to amend, the previously-assigned Magistrate Judge concluded that the official capacity claims for damages against Defendants improperly sought relief against parties immune from such relief. (ECF No. 13 at 8-9.)

In the SAC, the claims against Defendants Murray, Douglass, Davis, Harris, and Lugo are asserted in their individual capacities only. (SAC at 3-4.) However, the SAC does not specify whether Defendants Sebok, Varela, and Asuncion are

sued in their individual and/or official capacities. (*Id.* at 5-8.) The Court speculates that this may be the inadvertent result of Plaintiff not using the Civil Rights Complaint Form CV-66 to allege claims against these Defendants, which Form would have cued Plaintiff to identify the capacities in which these Defendants are sued.

Still, for completeness, the Court addresses whether Defendants Sebok, Varela, and Asuncion can be sued in their official capacities, and concludes they cannot. A suit against a defendant in his or her individual capacity "seek[s] to impose personal liability upon a government official for actions he takes under color of state law . . . . Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Ky. v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)).

The SAC alleges that Defendants Sebok, Varela, and Asuncion are employees of the Prison (SAC at 5-6), which the Exhibits to the SAC show is within the California Department of Corrections and Rehabilitation, a part of the State of California. (*Id.* at 14-19, 26-38, 49-50, 54-56, 58.) As such, the official capacity claims against Defendants Sebok, Varela, and Asuncion are properly treated as claims against the State of California. *See Leer v. Murphy*, 844 F.2d 628, 632 (9th Cir. 1998) (holding that a lawsuit against state prison officials in their official capacities was a lawsuit against the state). The State of California cannot be sued because a state is not a "person" subject to liability for money damages under Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In addition, pursuant to the Eleventh Amendment, a state and its official arm are immune from suits for money damages under Section 1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009) ("The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court, and the

Supreme Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity.").

State officials sued in their official capacity are considered "persons" when they are sued for prospective injunctive relief under Section 1983; the Eleventh Amendment does not bar such claims. *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007). As the SAC does not seek prospective injunctive relief, this exception to Eleventh Amendment immunity does not apply.

To the extent the SAC was intended to assert claims for damages against Defendants Sebok, Varela, and Asuncion in their official capacities, such claims are improper and therefore dismissed without prejudice. If Plaintiff files an amended complaint raising claims against these Defendants, he must correct this defect or risk having the claims against these Defendants dismissed with prejudice.

**B.     With the Exception of a Portion of Claim 5, the SAC Fails to State a Section 1983 Claim.**

Section 1983 provides a cause of action against "every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). The purpose of Section 1983 is "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id.* To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) a right secured by the Constitution or laws of the United States was violated; and (2) the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 claims can only be asserted against persons acting under color of state law. *See id.* In Claims 2 and 3, Plaintiff fails to allege that Defendants

9

Davis and Lugo, respectively, acted under color of state law. To the extent that this was an oversight, if Plaintiff files an amended complaint raising these claims against Defendants Davis and Lugo, he must correct this defect or risk having these claims against these Defendants dismissed with prejudice.

Plaintiff asserts Section 1983 claims premised on the Fourteenth, Eighth, and First Amendments. The Court addresses each in turn.

> **(1)** **With the Exception of the Loss of Plaintiff's Time Credits Through Alleged Inadequate Disciplinary Proceedings (Claim 5), the SAC Fails to State a Section 1983 Claim Premised on the Due Process Clause of the Fourteenth Amendment.**

The Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits the government from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1.

Plaintiff asserts that his Fourteenth Amendment due process rights were violated when the Defendants deprived him of his constitutionally-protected liberty and property interests (prison job, outdoor activity, phone, package, dayroom privileges, lost time credits) through constitutionally insufficient procedures (inadequate disciplinary proceedings and false disciplinary reports).

To plead a procedural due process violation, a plaintiff must allege two elements: (1) the plaintiff has a "liberty or property interest which has been interfered with by the State"; and (2) the procedures employed to deprive the plaintiff of liberty or property were constitutionally insufficient. *Ky. Dep't. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

With the exception of Claim 5 as stated below, Plaintiff's allegations are deficient with respect to both the protected interest prong and the procedures prong.

//

10

      (a)    **With the Exception of the Alleged Lost Time Credits,**
**The SAC Fails to Allege Protectable Interests.**

To plead a Fourteenth Amendment Due Process claim, the Plaintiff first must allege a protected liberty or property interest. *See Ky. Dep't of Corr.*, 490 U.S. at 460. Liberty interests can arise from the Constitution itself, or from an expectation or interest created by state laws or policies. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). State-created liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citations omitted). In determining whether a deprivation imposes an "atypical and significant hardship," courts consider:

> (1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority;
>
> (2) the duration of the condition, and the degree of restraint imposed; and
>
> (3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014).

Plaintiff asserts that, as a result of the allegations in the SAC, he lost his culinary job which had the second highest pay scale. (SAC at 10.) Plaintiff also alleges that Defendant Varela sanctioned Plaintiff with ninety days loss of (1) outdoor activity, (2) phone privileges, (3) packages, (4) dayroom, and (5) credit loss. (*Id.* at 42.)

Lost job: "[T]he Due Process Clause of the Fourteenth Amendment does not create a property or liberty interest in prison employment." *Walker v. Gomez*, 370

F.3d 969, 973 (9th Cir. 2004) (quotations omitted); *see also Davis v. Small*, 595 Fed. Appx. 689, 691 (9th Cir. 2014) ("The Due Process Clause itself does not give rise to a protected liberty interest in a paying prison job . . . .").

Loss of outdoor activity, phone, packages, and dayroom privileges for ninety days: "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485. "A temporary loss of privileges . . . does not 'present a dramatic departure from the basic conditions' of prison life." *Baker v. Walker*, No. CIV S-08-1370 DAD P, 2008 U.S. Dist. LEXIS 54808, at *9, 2008 WL 2705025, at *3 (E.D. Cal. July 9, 2008) (quoting *Sandin*, 515 U.S. at 486); *see Davis v. Small*, 595 Fed. Appx. at 691 ("The Due Process Clause itself does not give rise to a protected liberty interest in . . . phone and yard privileges.").

Accordingly, the Court concludes that, because the loss of Plaintiff's job and a ninety-day loss of Plaintiff's outdoor activity, phone, packages, and dayroom privileges do not constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," they do not constitute protectable liberty interests under the Due Process Clause. *See Sandin*, 515 U.S. at 484.

Lost credit: The Supreme Court has explained that the Constitution does not guarantee good time credit for satisfactory behavior while in prison. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). However, where a state not only provides a statutory right to good time credit, but also specifies that it can be forfeited only for serious misbehavior, the loss of good time credit may constitute a protected liberty within the Fourteenth Amendment. *See id.* Courts have applied *Wolff* to treat California good time credits as a protected liberty interest under the Fourteenth Amendment. *See., e.g., Wallace v. Fox*, No. CV 15-6305-PSG (SP), 2017 U.S. Dist. LEXIS 151599, at *9 (C.D. Cal. July 31, 2017). Accordingly, the Court concludes the SAC sufficiently alleges a liberty interest in the ninety days of lost credit that is protected by the Due Process Clause of the Fourteenth Amendment.

**(b)** **With the Exception of Alleged Inadequate Disciplinary Proceedings, the SAC Fails to State Constitutionally-Insufficient Procedures.**

Even if the interests alleged in the SAC were protectable (and they are not except for the lost time credits), the procedures by which Plaintiff claims he was deprived of such interests (inadequate disciplinary proceedings and false reports) were not constitutionally insufficient, with the potential exception of the disciplinary hearing.

Inadequate Disciplinary Proceedings: The SAC alleges that the disciplinary proceedings were inadequate in four ways: (i) Defendant Varela refused to allow testimony of witnesses that Plaintiff requested (Claim 5); (ii) Defendant Varela refused to turn his computer to allow Plaintiff to see the confidential informant's report (Claim 5); (iii) Defendant Varela disregarded the absence of inculpatory evidence in the confidential informant's report (Claim 5); and (iv) Defendants Lugo, Sebok and Asuncion mishandled Plaintiff's grievances regarding the false RVRs and the disciplinary hearing (Claims 3, 6 and 7).

In *Wolff*, the Supreme Court held that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff,* 418 U.S. at 556. The Supreme Court further held, however, that before a prisoner may be deprived of his liberty interest in good time credit, due process requires five minimal protections. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Id.* at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." *Id.* Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). Fourth, "the

13

inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. Fifth, "[w]here an illiterate inmate is involved . . . or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." *Id.* at 570.

> *Denial of Opportunity to Call Witnesses*

"Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution." *Id.* at 566. Prison officials may exercise the necessary discretion to keep a hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, limit access to other inmates to collect statements or to compile other documentary evidence, or based on irrelevance, lack of necessity, or the hazards presented in individual cases. *See id.* However, a "blanket denial of permission for an inmate to have witnesses physically present during disciplinary hearings is impermissible, even where jail authorities provide for interviewing of witnesses outside the disciplinary procedure." *Serrano v. Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003) (quoting *Mitchell v. Dupnik*, 75 F.3d 517, 525 (9th Cir. 1997)).

The SAC alleges sufficient facts to state a facially plausible claim that Plaintiff's Fourteenth Amendment right to due process was violated. Specifically, the SAC alleges that during the disciplinary hearing, Plaintiff asked correctional staff for witnesses "who would [have] been officials verifying [his] location."

14

(SAC at 41.)  The SAC also alleges Defendant Varela "denied Plaintiff witness."  (*Id.*)  At this stage, the Court must accept these allegations as true and construe them in the light most favorable to Plaintiff.  *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989) ("Our review [of dismissal of a complaint] is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff.").  If the correctional staff witnesses could have verified Plaintiff's location, the testimony would have been relevant to substantiate Plaintiff's claim that he physically was not near the location of the riot.  At the screening stage, the allegations are sufficient to allege a Fourteenth Amendment Due Process violation for failure to allow Plaintiff to call witnesses during his disciplinary hearing.  Liberally construing the SAC and drawing reasonable inferences in favor of Plaintiff, as the Court must at this stage, the Court concludes that Claim 5 contains allegations sufficient to state a Fourteenth Amendment Due Process claim with respect to the time credits that were lost as a result of failure to allow Plaintiff to call witnesses during the disciplinary hearing.

> ➢ *Denial of Opportunity to Review Confidential Informant's Report*

Due process does not require that an informant's identity be revealed to an inmate.  *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987).  Due process also does not require that inmates be given a copy of confidential informants' reports.  *Lewis v. Moore*, No. CV 04-3055-PHX-SMM, 2007 U.S. LEXIS 61667, *6, 2007 WL 2410340, *2 (D. Ariz. Aug. 21, 2007) ("Inmates do not have a due process right to . . . obtain a copy of the confidential statement reports.").  Even where confidential informants are involved, all that is required is written notice "in order to inform him [or her] of the charges and to enable him [or her] to marshal the facts and prepare a defense."  *Wolff*, 418 U.S. at 564; *see Zimmerlee*, 831 F.2d at 188 (holding that, in a disciplinary hearing involving a confidential informant, notice

was sufficient where it charged the prisoner with smuggling marijuana and amphetamines with members of a prison club over a five-month period).

Plaintiff asserts that Defendant Varela refused to turn his computer to allow Plaintiff to see the confidential informant's report. Because Plaintiff does not have a right to receive a copy of the confidential informant's report and does not allege that the notice of his charges was insufficient, these allegations fail to state a due process claim.

> *Disregard of Absence of Inculpatory Evidence*

Plaintiff claims that Defendant Varela disregarded the absence of inculpatory evidence in the confidential informant's report. (SAC at 44.) Specifically, Plaintiff alleges that the confidential informant did not mention who Plaintiff was fighting and who struck first. (*Id.* at 20.)

Procedural due process in the revocation of good time credits is satisfied if the findings of the prison disciplinary board are supported by "some evidence" in the record. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985). The "some evidence" standard is "minimally stringent"; "the relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (quoting *Hill*, 472 U.S. at 455-56).

However, even under the "some evidence" standard, the evidence relied upon by prison officials must have sufficient "indicia of reliability." *Bruce v. Ylist*, 351 F.3d 1283, 1288 (9th Cir. 2003). "A prison disciplinary committee's determination derived from a statement of an unidentified inmate informant satisfies due process only when (1) the record contains some factual information from which the committee reasonably can conclude that the information was reliable, and (2) the record contains a prison official's affirmative statement that safety considerations

16

prevent the disclosure of the informant's name." *Zimmerlee*, 831 F.2d at 186. The SAC does not allege that the confidential informant's report was not reliable.

Assuming (as the Court must at this time) that Defendant Varela disregarded the absence of inculpatory information in the confidential informant's report, the allegations in the SAC still do not allow the court to draw the reasonable inference that Defendant Varela's conclusions were not supported by "some evidence." Rather, Plaintiff alleges Defendants Murray, Davis, and Douglass filed reports of the incident, and the Disciplinary Hearing Results (attached to the SAC) state that in addition to the confidential informant's report, the findings also were supported by the separate written reports of Defendants Murray, Davis, and Douglass. (SAC at 34-35.) Because the disciplinary hearing's findings were supported by "some evidence," these allegations fail to state a due process claim.

> ➢ *Improper Handing of Grievances*

In Claims 3, 6 and 7, Plaintiff alleges that Defendants Lugo, Sebok and Asuncion mishandled Plaintiff's grievances regarding the false RVRs and the disciplinary hearing. (SAC at 45-48, 51-53.) Specifically, Plaintiff alleges that Defendant Asuncion improperly delegated two of Plaintiff's grievances to Defendant Lugo (Claims 3, 7), who blocked the investigation of the false RVRs (Claim 3). (*Id.* at 20-23, 51-52.) In addition, Plaintiff alleges that Defendant Sebok intercepted and responded to Chief Deputy Warden Cano's mail, thus preventing review of the false RVRs by a higher authority (Claim 6). (*Id.* at 45-48.)

Prisoners are entitled to be free from arbitrary actions of prison officials; however, the protections against arbitrary actions are the procedural due process requirements outlined in *Wolff*. *See Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984). Defendants' alleged failure to process Plaintiff's grievances properly, without more, is not enough to establish a violation of Plaintiff's constitutional rights. *See Peralta v. Dillard*, 744 F.3d 1076, 1087 (9th Cir. 2014); *see also*

*Gonzales v. Woodford*, No. C 04-5447 SI (pr), 2005 U.S. Dist. LEXIS 6621, at *5-6
(N.D. Cal. Apr. 12, 2005) ("Because [the inmate] had no federal constitutional right
to a properly functioning appeal system, an incorrect decision on an administrative
appeal, a failure to process an appeal in a particular way, or any other structural
problem in the appeals system did not amount to a violation of his right to due
process."). The allegations regarding the mishandling of Plaintiff's grievances fail
to state a due process claim.

False Reports: Plaintiff alleges that Defendant Davis (Claim 2) and
Defendant Lugo (Claim 3) falsified reports in violation of Plaintiff's Fourteenth
Amendment rights.

"Even accepting as true Plaintiff's allegation that the report[s] [were]
falsified, courts have held that a prisoner does not have a constitutional right to be
free from wrongfully issued disciplinary reports." *Buckley v. Gomez*, 36 F. Supp.
2d 1216, 1222 (S.D. Cal. 1997), *aff'd without opinion*, 168 F.3d 498 (9th Cir.
1999); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate
has no constitutionally guaranteed immunity from being falsely or wrongly accused
of conduct which may result in the deprivation of a protected liberty interest"). As
stated above, prisoners are entitled to be free from arbitrary actions of prison
officials; however, the protections against arbitrary actions are the procedural due
process requirements outlined in *Wolff*. *See Hanrahan*, 747 F.2d at 1140. As
prisoners do not have a constitutional right to be free from falsified disciplinary
reports, such reports cannot form the basis for Plaintiff's Section 1983 due process
claims.

**(2)     The SAC Fails to State a Section 1983 Claim Premised on
the Equal Protection Clause of the Fourteenth Amendment.**

Plaintiff alleges in Claim 5 that Defendant Varela's discipline of Plaintiff and

18

other African American prisoners was harsher than the discipline of the Hispanic prisoners charged with the same offense. (SAC at 43.) Although not styled as such, the Court interprets this as a Fourteenth Amendment Equal Protection claim. Under such a claim, Plaintiff's allegations are deficient.

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff*, 418 U.S. at 556. To state an Equal Protection claim under Section 1983, a plaintiff must allege that the defendants acted with an intent or purpose to discriminate against him/her based upon membership in a protected class. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Serrano*, 345 F.3d at 1082 (quoting *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994)).

Claim 5 alleges that Defendant Varela found "every last African American guilty of participating in a riot" while he found the seven Hispanic prisoners guilty of only a lesser offense: disobeying a direct order. (SAC at 43.) The SAC alleges that Defendant Varela found "one race guilty of a lesser offense" but punished "the African Americans when there is insufficient evidence for a guilty finding." (*Id.* at 44.) However, the SAC does not allege any facts to support a claim that Defendant Varela acted with an intent or purpose to discriminate against Plaintiff intentionally *because of* Plaintiff's race. *See Serrano*, 345 F.3d at 1082. As such, the Fourteenth Amendment Equal Protection claim is deficient and is dismissed with leave to amend.

The Court previously advised Plaintiff of the deficiencies of his Fourteenth Amendment Equal Protection claim in the FAC. (June 5, 2018 Order at 13-14.) If Plaintiff files a Third Amended Complaint with an Equal Protection claim, he must correct the defects explained above or risk dismissal of the claim with prejudice.

//

//

19

**(3)** **The SAC Fails to State a Section 1983 Claim Premised on the Eighth Amendment.**

Plaintiff asserts Eighth Amendment violations in Claims 1 through 5. These Claims involve allegations of (i) filing false reports (Claims 1 through 4), (ii) conspiracy (Claim 2), and (iii) inadequate conduct during Plaintiff's disciplinary hearing (failure to allow Plaintiff to call witnesses, refusal to allow Plaintiff to see the confidential informant's report, and failure to give weight to the absence of inculpatory evidence), and (iv) the punishment imposed as a result thereof (ninety days lost outdoor activity, phone privileges, packages, day room, and credit loss) (Claims 1- 5).

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment "'embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ,' against which we must evaluate penal measures." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)). Still, conditions of confinement may be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) ("To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.").

Nonetheless, prison officials must provide prisoners with "basic human needs" and the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Basic human needs include "food, clothing, shelter, sanitation, medical care, and personal safety," *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), "warmth [and] exercise," *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

//

A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission is sufficiently serious such that it results in the denial of "the minimal civilized measure of life's necessities"; and (2) subjectively, the prison official acted with "deliberate indifference" to an inmate's health or safety (i.e., "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). *Farmer*, 511 U.S. at 834, 837.

Of all of Plaintiff's allegations for Eighth Amendment violations, the only one that approximates the loss of life necessities required under the objective prong is the allegation that Plaintiff lost ninety days of outdoor activity. *See Lopez v. Smith*, 203 F.3d 1122, 1132-33 (9th Cir. 2000). Drawing inferences in the light most favorable to Plaintiff (*see Park*, 851 F.3d at 918), these allegations could be interpreted as a claim for loss of exercise, one of the basic human needs protected by the Eighth Amendment. The Ninth Circuit has held that deprivation of outdoor exercise for six and a half weeks – approximately half the length of Plaintiff's loss of outdoor activity – meets the objective requirement of the Eighth Amendment. *See Lopez*, 203 F.3d at 1132-33.

Nonetheless, the SAC does not allege any facts to plausibly satisfy the subjective requirement of the Eighth Amendment – that is, there are no allegations that Defendants Murray, Douglass, Davis, Lugo, Harris or Varela acted with deliberate indifference to Plaintiff's health or safety. Because there are no allegations Defendants acted with deliberate indifference to deprive Plaintiff of outdoor exercise, the SAC fails to state an Eighth Amendment claim.

//

//

//

### (4) The SAC Fails to State a Section 1983 Claim Premised on the First Amendment.

Plaintiff asserts a First Amendment claim based on allegations that Defendant Sebok intercepted and responded to a "22 Form" that Plaintiff sent through the U.S. mail to Chief Deputy Cano, thus preventing Plaintiff from having his false RVR examined by a higher authority – the Chief Deputy (Claim 6). (SAC at 45-47.) These allegations could be interpreted as a claim for violation of Plaintiff's First Amendment right to send and receive mail as well as a claim for violation of his First Amendment right to seek redress for his grievances. The Court reviews Plaintiff's allegations under both theories, and concludes that, as pleaded, the First Amendment claims are deficient.

### (a) The SAC Fails to Allege Facts Sufficient to Support a First Amendment Mail Claim.

Prisoners enjoy a First Amendment right to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). However, a prison may adopt regulations that impinge on an inmate's constitutional rights if those regulations are reasonably related to legitimate penological interests, such as security, order and rehabilitation. *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). When a prison regulation affects outgoing mail as opposed to incoming mail, there must be a "closer fit between the regulation and the purpose it serves." *Id.* (quoting *Thornburgh*, 490 U.S. at 412).

Courts have upheld regulations permitting prison officials to inspect non-legal mail. *See, e.g., Witherow*, 52 F.3d at 265-66 (upholding inspection of outgoing non-legal mail to prevent prisoners from disseminating offensive or harmful materials). Legal mail – correspondence between an attorney and prisoner – is afforded greater protection than non-legal mail, but may be opened and inspected for contraband in the prisoner's presence. *See Wolff*, 418 U.S. at 575-77.

22

However, grievance mail, including to prison officials, is not legal mail and therefore does not need to be read in a prisoner's presence. *See O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996) (upholding regulation allowing prison mailroom officials to read grievance mail sent to government agencies, as the prevention of criminal activity and maintenance of prison security are legitimate penological interests that justify the regulation of incoming and outgoing prisoner mail); *Clayton v. Santa Rita Jail*, No. C 00-2931 WHA (PR), 2000 U.S. Dist. LEXIS 15803, at * 2-4, 2000 WL 1610675, at *1-2 (N.D. Cal. Oct. 20, 2000) (holding that prisoner's mail to Chief of Inmate Appeals at the California Department of Corrections was grievance mail, which is not "legal mail" and therefore can be opened by prison employees outside the prisoner's presence without violating the prisoner's Constitutional rights "because such a practice/policy furthers legitimate penological interests."). Accordingly, opening Plaintiff's 22 Form outside his presence does not violate the First Amendment.

Furthermore, an isolated incident of alleged interference with mail without more is not sufficient to establish a First Amendment violation. *See Davis v. Goord*, 320 F.3d 346, 351-52 (2d Cir. 2003) (holding that two instances of mail interference are insufficient where complaint did not allege an ongoing practice of unjustified censorship or prejudice to the prisoner's legal lawsuits); *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) ("[An] isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation."); *Zaiza v. Tamplen*, No. 2:15-cv-0447-KJM-EFB, 2016 U.S. Dist. LEXIS 66326, at *9-10, 2016 WL 2930877, at *4 (E.D. Cal. May 19, 2016) ("An isolated incident of mail interference or tampering is usually insufficient to establish a constitutional incident or delay."). As the SAC alleges only one incident of Defendant Sebok intercepting Plaintiff's mail, it is insufficient to allege a violation of Plaintiff's First Amendment right to send mail.

### (b)  The SAC Fails to Allege Facts Sufficient to Support a First Amendment Redress Claim.

The gravamen of Plaintiff's redress claim is that his efforts to pursue a grievance were thwarted when Defendant Sebok intercepted the grievance and did not allow it to reach and be reviewed by the Chief Deputy Warden, "a higher authority." (SAC at 45.)

The First Amendment guarantees "the right of the people . . . to petition the government for a redress of grievances." U.S. Const. amend. I. The right to petition the government includes a prisoner's right to seek redress of grievances from prison authorities. *See Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015). Once the prisoner has access to the grievance procedure, however, he does not have a "separate constitutional entitlement to a *specific* prison grievance procedure." *Ramirez*, 334 F.3d at 860 (emphasis added); *see also Clinton v. Luke*, No. CV 08-4179-DOC (OP), 2009 U.S. Dist. LEXIS 122873, at *18-19 (C.D. Cal. Nov. 30, 2009) (citing *Ramirez* to dismiss a First Amendment claim for failure to properly process an administrative appeal). Here, Plaintiff alleges that he pursued a grievance procedure, and attaches the responses to his administrative appeals to the SAC.[1] Because Plaintiff has no constitutional right to a specific prison grievance system, the actions of Defendant Sebok in reviewing Plaintiff's internal appeal cannot create liability under Section 1983. *See Ramirez*, 334 F.3d at 860.

In addition, the First Amendment redress of grievances claim is insufficiently alleged because the SAC does not allege any actual injury resulting from the alleged failures to process Plaintiff's grievances properly. *See Lewis v. Casey*, 518

---

[1]The FAC includes what appears to be the third page of an undated administrative appeal letter written by Chief Deputy Warden Cano. (FAC at 38.) When an amended complaint is filed, it supersedes the previous complaint and renders it null and void; only the amended complaint remains legally operable. *Dichter-Mad Family Partners, LLP v. United States*, 709 F.3d 749, 790 (9th Cir. 2013). If Plaintiff files a Third Amended Complaint, all relevant exhibits should be attached.

U.S. 343, 351-55 (1996) (holding that an inmate who alleges violation of right of access to courts is required to show actual injury in that the alleged actions or shortcomings have hindered, or are presently hindering, his efforts to pursue a legal claim). Rather, as stated above, Plaintiff received responses to his administrative appeals and therefore was not hindered from pursuing his claims.

For these reasons, the SAC fails to state any First Amendment claim. Accordingly, the First Amendment claim (Claim 6) is dismissed with leave to amend. The Court previously advised Plaintiff of the weaknesses of his First Amendment claim. (June 5, 2018 Order at 15-16.) The SAC did not attempt to correct these shortcomings. Instead, with the exception of adding the allegation that the grievance was sent via U.S. Mail, the SAC repeated the same allegations in support of the First Amendment claims. If Plaintiff files a Third Amended Complaint with a First Amendment mail or redress claim, he must correct the defects explained above or risk dismissal of the claims with prejudice.

### (5) The SAC Fails to State a Conspiracy Claim.

Although not set forth as a separate claim, within the body of Claim 2 the SAC alleges Defendant Davis conspired with Defendants Murray, Douglass, and Harris. (SAC at 13.)

A conspiracy claim involving Section 1983 requires allegations supporting "an agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin*, 312 F.3d at 441 (quoting *United Steelworkers of Am.*, 865 F.2d at 1541). Conclusory allegations of conspiracy to violate Constitutional rights are insufficient

///

25

to state a Section 1983 claim. *See Burns v. Cty. of King*, 883 F.2d 819, 821 (9th Cir. 1989).

Without any supporting facts, the SAC simply alleges that Defendant Davis conspired with Defendants Murray, Douglass, and Harris. (SAC at 13.) The SAC does not allege an agreement or meeting of the minds to violate Plaintiff's constitutional rights. *See Franklin*, 312 F.3d at 441. Nor is there a "conspiracy" simply because Defendants Davis, Murray, Douglass, and Harris all allegedly took the same action, *i.e.*, wrote false reports. *See Myers v. City of Hermosa Beach*, 299 Fed. Appx. 744, 747 (9th Cir. 2008) ("Before a conspiracy claim can be sustained, a plaintiff must show a meeting of the minds by the so-called conspirators. . . . However, the evidence adduced must demonstrate more than the mere fact that two people did or said the same thing; the evidence must actually point to an agreement.") (citation omitted).

The conspiracy claim in Count 2 is not sufficiently alleged and is dismissed with leave to amend. The Court previously advised Plaintiff of the deficiencies of his conspiracy allegations in the FAC. (June 5, 2018 Order at 16.) The SAC did not attempt to correct these shortcomings, but instead repeated the same conclusory allegations. If Plaintiff files a Third Amended Complaint with a Conspiracy claim, he must correct the defects explained above or risk dismissal of the claim with prejudice.

## V.     CONCLUSION

In sum, the only claim that is sufficiently alleged is the Fourteenth Amendment claim in Claim 5 that is premised on the time credits that were lost as a result of an alleged constitutionally-deficient disciplinary proceedings. For the reasons discussed above, the Court **DISMISSES** the SAC **WITH LEAVE TO AMEND**.

///

26

If Plaintiff still wishes to pursue this action, he shall file a Third Amended Complaint within **thirty (30) days** after the date of this Order.  In any amended complaint, the Plaintiff shall cure the defects described above.  Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the SAC.  The Third Amended Complaint, if any, shall be complete in itself and shall bear both the designation "Third Amended Complaint" and the case number assigned to this action.  It shall not refer in any manner to any previously filed complaint in this matter.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims.  Plaintiff is advised that pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief."  **Plaintiff strongly is encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.**  In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims.  Plaintiff strongly is encouraged to keep his statements concise and to omit irrelevant details.  It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation.  Plaintiff also is advised to omit any claims for which he lacks a sufficient factual basis.

**The Court explicitly cautions Plaintiff that failure to timely file a Third Amended Complaint, or failure to correct the deficiencies described above, will result in a recommendation that this action, or portions thereof, be dismissed with prejudice for failure to prosecute and/or failure to comply with court orders pursuant to Federal Rule of Civil Procedure 41(b).**

If Plaintiff no longer wishes to pursue this action in its entirety or with respect to particular Defendants or claims, he voluntarily may dismiss all or any part of this action by filing a Notice of Dismissal in accordance with Federal Rule

of Civil Procedure 41(a)(1).  **A form Notice of Dismissal is attached for Plaintiff's convenience.**

Plaintiff is advised that this Court's determination herein that certain allegations in the SAC are insufficient to state a particular claim should not be seen as dispositive of such claims.  Accordingly, although the undersigned Magistrate Judge believes that, with the exception of the loss of time credits that resulted from an alleged inadequate disciplinary hearing (Claim 5), Plaintiff has failed to plead sufficient factual matter in the pleading, accepted as true, to state a claim for relief that is plausible on its face, Plaintiff is not required to omit any claim or defendant in order to pursue this action.  However, if Plaintiff decides to pursue a claim in an amended complaint that the undersigned previously found to be insufficient, then pursuant to 28 U.S.C. § 636, the undersigned ultimately may submit to the assigned District Judge a recommendation that such claim may be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file objections. *See* Fed. R. Civ. P. 72(b); C.D. Cal. L.R. 72-3.

IT IS SO ORDERED.

DATED: September 28, 2018

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE